UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. |
| v. | Violations: |
| TINA L. JACKSON-WHITE, | 18 U.S.C. § 1347 (Health Care Fraud); |
| | 18 U.S.C. § 2 (Causing an Act to Be Done) |
| Defendant. | |
| | Criminal Forfeiture: |
| | 18 U.S.C. § 982(a)(7); |
| | 18 U.S.C. § 982(b)(1); |
| | 21 U.S.C. § 853 |

## INFORMATION

The United States Attorney informs the Court that:

### Introduction

1.  Defendant TINA L. JACKSON-WHITE was the owner, President and Chief Executive Officer of Family Home Medical Equipment and Supplies, LLC ("Family Home"), located in Forestville, Maryland.

2.  Family Home was a durable medical equipment ("DME") company that provided, among other things, incontinence supplies and garments and other medical devices to Medicaid beneficiaries in the District of Columbia and Maryland.

### The Medicaid Program

3.  The Medicaid Program was a medical assistance program established by Congress under Title XIX of the Social Security Act of 1965 (the "Medicaid Act"). Medicaid was administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency within the

United States Department of Health and Human Services ("HHS") and provided medical insurance to individuals whose incomes were insufficient to meet the costs of necessary medical expenses. Individuals who received benefits under Medicaid were often referred to as Medicaid "beneficiaries." Under the Medicaid Act, each state, including the District of Columbia, was required to promulgate and administer its own plan for medical assistance in accordance with federally-established minimum requirements.

4. The District of Columbia's Medicaid Program ("D.C. Medicaid"), was a federally-assisted, District-operated "health care benefit program" under 18 U.S.C. § 24(b), and was administered by the District of Columbia Department of Health, Department of Health Care Finance ("DHCF"). DHCF provided specific policies and procedures for healthcare providers who participated in the D.C. Medicaid Program. The District of Columbia enacted a medical assistance program, whereby it contracted with Affiliated Computer Services, Inc., a Xerox company ("Xerox") to act as its fiscal agent for the processing and payment of claims submitted by Medicaid providers for covered services rendered to D.C. Medicaid beneficiaries. To receive payment from Medicaid, providers in the District of Columbia were required to submit their claims for payment to Xerox either by mail or electronic transmission. Xerox, in turn, processed those claims and made payments to the Medicaid providers by mail or electronic transmission.

5. Under the District of Columbia's Medicaid Program, DME supplies were provided to all eligible Medicaid beneficiaries who were seeking medical care and services covered under the program. DME supplies were primarily used to serve a medical purpose and were generally not useful to a person in the absence of an illness or injury.

6. Federal laws, regulations, and rules prohibited falsely claiming DME supply

2

expenses not requested and authorized by the District of Columbia's Medicaid program, or not actually received or medically necessary. DME providers may only bill for supplies that were actually provided, and were medically necessary for the treatment of an illness or injury.

### D.C. Medicaid Billing Procedures

7. The DHCF provided specific instructions for billing of DME. These instructions could be found in the DHCF Provider Billing Manual for Durable Medical Equipment. Specifically, these instructions ensured that the need for DME related to the diagnosed condition provided in the Prior Authorization Approval/Request Form ("Form 719A"). The Form 719A was required to be submitted to DHCF for every DME item for which DME providers would be billing pursuant to Medicaid. Form 719A required the signature of a physician or other qualified health care provider stating the diagnosis of the patient which necessitated the patient's need for the equipment being prescribed.

8. When submitting Medicaid claims, Healthcare Common Procedure Coding System (HCPCS) were used to define the DME provided. Incontinence is the inability of the body to control urinary and bowel functions. Under the Medicaid program, States and the District of Columbia have the option to cover incontinence care supplies and related equipment and accessories. Supplies and equipment could include disposable pads, disposable undergarments, irrigation syringes, saline solutions and collection devices. Medicaid used the HCPCS level II standardized coding system, also known as procedure codes, for describing and identifying health care equipment and supplies in health care transactions. Procedure code A4520 was designated for each incontinence garment, regardless of type (e.g., briefs, diapers, liners). Procedure code A4554 was designated for disposable underpads, regardless of sizes

3

(e.g., Chux). Procedure code A4927 was designated for non-sterile gloves, 100 per box.

9. When submitting a claim to Medicaid for services or supplies, DME providers were required to submit a Health Insurance Claim Form, or CMS-1500, which provided, among other things, patient information, physician information and billing codes for claimed payment.

10. In order to bill Medicaid for DME, a DME supplier had to be an approved D.C. Medicaid provider. The DME provider obtained this approval by submitting an application to D.C. Medicaid. If the provider met certain qualifications, D.C. Medicaid approved the application. The DME provider was issued a number called a "provider number." The DME provider was then able to submit bills, known as "claims," for payment to D.C. Medicaid for the cost of DME supplied to beneficiaries pursuant to rules and regulations.

11. On or about March 8, 2005, Family Home became an approved D.C. Medicaid provider of DME. As an approved D.C. Medicaid DME provider, Family Home was assigned a provider number authorizing it to submit legitimate claims for payment to D.C. Medicaid. The provider agreement contained an attestation clause that was signed by defendant TINA L. JACKSON-WHITE, which stated as follows:

> [I] agree that the receipt by the D.C. Medicaid program of the first and each succeeding claim for payment from [me] will be the Medicaid program's understanding of [my] declaration that the provisions of this Agreement and supplemental providers manuals and instructions have been understood and complied with.

12. Under Medicaid rules, Family Home would pay for the cost of incontinence products supplied to a beneficiary when the beneficiary had a serious, long-term medical or physical condition that required such products.

13. When submitting claims for payment to D.C. Medicaid for HCPCS codes, A4520,

4

A4554, and A4927, the D.C. Medicaid provider was required to and did submit to Xerox, CMS-1500 claim forms. Among the required information on the CMS-1500 was a specific procedure code to identify the type of DME intended to be supplied to the beneficiary.

### Family Home's Billing Practices

14. Family Home submitted CMS-1500 claim forms to Xerox for DME supplies that Family Home purportedly provided to D.C. Medicaid beneficiaries. The claim forms included several items of information, including the supplier's Provider Identification Number, the beneficiary's name, the HCPCS code for the type of supplies provided, as well as the amount of items provided. Family Home certified that all of the information on the submitted claim forms was accurate.

15. Between in or about January 2007 through in or about December 2011, Family Home billed D.C. Medicaid $ 422,822.15 in claims related to HCPCS codes A4520, A4554, and A4927. D.C. Medicaid paid Family Home $ 422,732.15, of which, approximately $ 212,893.40 was the result of fraudulent claims.

16. Between in or about January 2007 through in or about December 2011, TINA L. JACKSON-WHITE knowingly submitted false and fraudulent CMS-1500 claim forms to Xerox in order to bill D.C. Medicaid for incontinence products that were not actually provided to D.C. Medicaid beneficiaries.

17. Following the submission of the false CMS-1500 forms to Xerox by TINA L. JACKSON-WHITE, Family Home received D.C. Medicaid payments in the form of checks via the United States Postal Service. The checks were then cashed or deposited in or negotiated through bank accounts controlled by defendant TINA L. JACKSON-WHITE.

## COUNT ONE
### (HEALTH CARE FRAUD - - 18 U.S.C. §§ 1347, 2(b))

18. Paragraphs one through seventeen are re-alleged and incorporated by reference as if fully set forth herein.

### Scheme to Defraud D.C. Medicaid

19. Between in or about January 2007 through in or about December 2011, in the District of Columbia and elsewhere, defendant TINA L. JACKSON-WHITE, knowingly, willfully, and with intent to defraud, executed a scheme and artifice: (a) to defraud a health care benefit program, namely D.C. Medicaid, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from D.C. Medicaid by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

### Manner and Means

20. It was part of the scheme that defendant TINA L. JACKSON-WHITE knowingly submitted CMS-1500 forms for Procedure code A4520 (designated for each incontinence garment, any type, such as briefs, diapers, liners), allegedly provided by Family Home to D.C. Medicaid beneficiaries, then caused claims to be submitted to Medicaid for the incontinence products, but had not provided or had provided significantly fewer incontinence products to the D.C. Medicaid beneficiaries.

21. It was further part of the scheme that defendant TINA L. JACKSON-WHITE

knowingly submitted CMS-1500 forms for Procedure code A4554, designated for disposable underpads, allegedly provided by Family Home to D.C. Medicaid beneficiaries, then caused claims to be submitted to D.C. Medicaid for the disposable underpads, but had not provided or had provided significantly fewer disposable underpads to the D.C. Medicaid beneficiaries.

22. It was further part of the scheme that defendant TINA L. JACKSON-WHITE knowingly submitted CMS-1500 forms for Procedure code A4927, designated for non-sterile gloves, allegedly provided by Family Home to D.C. Medicaid beneficiaries, then caused claims to be submitted to D.C. Medicaid for the for non-sterile gloves, but had not provided or had provided significantly fewer non-sterile gloves to the Medicaid beneficiaries.

23. It was further part of the scheme that defendant TINA L. JACKSON-WHITE instructed one or more of Family Home's employees to bill D.C. Medicaid the maximum number of incontinence products allowed each month despite the fact that she knew that the D.C. Medicaid beneficiaries were not provided the maximum number of incontinence products each month.

24. It was further part of the scheme that defendant TINA L. JACKSON-WHITE submitted or caused claims to be submitted to D.C. Medicaid which she knew were false and fraudulent. For example, as outlined in the Table below:

| DATE | MEDICAID BENEFICIARY | CPT CODE | UNITS BILLED | UNITS RECEIVED | PAID AMOUNT | REASON FALSE |
|---|---|---|---|---|---|---|
| 4/24/2008 | P.L. | A4554 | 150 | 0 | $ 52.50 | Not Provided |
| 9/25/2008 | P.L. | A4520 | 300 | 0 | $270.00 | Not Provided |
| 10/19/2009 | D.B. | A4554 | 150 | 0 | $52.50 | Not Provided |
| 10/20/2009 | K.B. | A4520 | 300 | 0 | $270.00 | Not Provided |
| 12/15/2009 | T.R | A4520 | 300 | 0 | $270.00 | Not Provided |
| 1/25/2010 | C.C. | A4520 | 300 | 0 | $270.00 | Not Provided |
| 2/19/2010 | V.S. | A4554 | 150 | 0 | $52.50 | Not Provided |
| 8/18/2010 | V.S. | A4520 | 300 | 0 | $270.00 | Not Provided |
| 12/6/2010 | K.P. | A4554 | 150 | 0 | $52.50 | Not Provided |

| 1/21/2011 | D.M. | A4927 | 4   | 2   | $24.00  | Partial Provided |
| --- | --- | --- | --- | --- | --- | --- |
| 2/4/2011  | J.P. | A4520 | 300 | 112 | $270.00 | Partial Provided |
| 4/7/2011  | D.B. | A4520 | 300 | 0   | $270.00 | Not Provided     |
| 1/4/2011  | L.P. | A4520 | 300 | 80  | $270.00 | Partial Provided |
| 2/2/2011  | S.M. | A4520 | 300 | 168 | $270.00 | Partial Provided |
| 3/4/2011  | M.O. | A4520 | 300 | 48  | $270.00 | Partial Provided |

**(Health Care Fraud, Causing an Act to be Done, Aiding and Abetting in violation of Title 18, United States Code, Sections 1347 and 2).**

## CRIMINAL FORFEITURE ALLEGATION

25. Upon conviction of the offense alleged in Count 1, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of this offense. The United States will seek a forfeiture money judgment against the defendant in the amount of $212,893.40.

26. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 982(a)(7) and (b)(1), and Title 21, United States Code, Section 853(p))**

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

By: _____
Lionel André
Assistant United States Attorney
D.C. Bar No. 422534
Fraud and Public Corruption Section
555 4th St., N.W., Room 5845
Washington, D.C.  20530
(202) 252-7818